UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

John-Joseph Forjone,
Samantha Marie Forjone, et al.,

                Plaintiffs,

                              **Hon. Hugh B. Scott**

                              05CV395A

           v.                              **Report &**
                              **Recommendation**
                              **and**
                              **Order**

Michael O. Leavitt, et al.,

                Defendants.

Before the Court are various motions to dismiss by the respective defendants (Docket No. 15, 19, 23, and 69), the plaintiffs' motion to amend the complaint (Docket No. 25), the defendants' respective motions for sanctions (Docket No. 27 and 37), the plaintiffs' motion for a stay relating to the motions for sanctions (Docket No. 53), the plaintiffs' motion for service of the complaint *nunc pro tunc* (Docket No. 21), and the plaintiffs' motion for a default judgment (Docket No. 64).

**Background**

The plaintiffs, John-Joseph Forjone, Samantha Marie Forjone (" the Forjones") and an entity entitled The Ad Hoc New York State Citizens for Federal, State, Municipal Corporation

Equitable Means and Needs Testing for The Annual Medicaid Real Property Tax Levy[1], bring this action alleging that their constitutional rights are being violated due to the federal, state and local taxation policies used to fund the Medicaid program. The plaintiffs assert that the funding scheme violates their rights as "guaranteed in 1st, 4th, 5th, 6th, 8th, 9th, 10th, and 13th" Amendments and and are denied equal protection and due process. Named as defendants are Michael O. Leavitt, U.S. Secretary of Health and Human Services; Antonia C. Novello, New York State Commissioner of Health; the State of New York Office of Real Property Services[2]; Ifigenia T. Brown, Chairperson of the New York State Office of Real Property Services; Stanley J. Dudek, Orleans County Legislature Chief Administrative Officer; Orleans County Board of Real Property Assessment;[3] Town of Clarendon Board of Real Property Assessment; Paul R. Nicosia, Chairperson of the Clarendon Town Board of Review; Patricia Beadle, Clarendon Town Assessor;[4] Randy A. Daniels, New York Secretary of State; George E. Pataki, Governor of New

---

[1]  The record does not reflect whether this group is incorporated or otherwise registered as a civic association, political action committee or other legal entity. The complaint is signed by (" the Forjones"). It does not appear that either Forjone is admitted for the practice of law and, therefore may not maintain this action on behalf of other individuals or entities. Rowland v. California Men's Colony, 506 U.S. 194, 202-203 (1993); Licht v. America West Airlines, 40 F.3d. 1058, 1059 (9th Cir. 1994).

[2]  The Office of Real Property Services is an agency of the State of New York, and as such, the Court lacks jurisdiction over this entity pursuant to the Eleventh Amendment to the United States Constitution. (Docket No. 20 at page 6). The complaint should be dismissed as against this defendant on these grounds.

[3]  Stanley J. Dudek, Orleans County Legislature Chief Administrative Officer; Orleans County Board of Real Property Assessment are referred to collectively as the "Orleans County Defendants."

[4]  The Town of Clarendon Board of Real Property Assessment; Paul R. Nicosia, Chairperson of the Clarendon Town Board of Review; Patricia Beadle, Clarendon Town Assessor are referred to collectively as the "Town of Clarendon Defendants."

York; Elliott Spitzer[5], New York State Attorney General; and the United States Attorney General.

The complaint in this case is not a simple, concise and direct pleading as required by Rule 8(e) of the Federal Rules of Civil Procedure. Instead, the unwieldy complaint is an extended argument against various inter-governmental tax policies, including extraneous commentary on numerous socio-political issues[6] citing information from sources such as newspaper columnists and reporters. [7] The complaint purports to set forth eight claims for relief:

>   1.  <u>A denial of equal protection and due process by Leavitt</u>. The claim asserts that Leavitt has admitted that some states use "accounting gimmicks"; that Leavitt is in gross dereliction of duty; that Leavitt knows there is disparity in the way that New York disburses funds for Medicaid compared to other states; and that Leavitt knows that the City of New York is being treated differently than upstate municipal entities. (Docket No. 1, ¶¶ 55-61).
>
>   2.  <u>A denial of equal protection and due process by Novello</u>. The plaintiffs assert that Novello acts "as the Federal agent" of Leavitt; and is involved in a conspiracy with the other defendants that "maliciously treats low income citizens as a class differently from municipal entity to municipal entity" to "unreasonably impose mandates

---

[5] Novello, Brown, Daniels, Pataki and Spitzer are sometimes referred to as the "New York State Defendants."

[6] Among other things, the plaintiffs discuss the "finality of deindustrialization by the late 1980's" in the "post industrial, post agricultural, post Erie Canal economy" which has apparently resulted in the "ongoing warehousing of the elderly in both shared facilities and independent living or assisted living arrangements." (Docket No. 1 at ¶ 36-37).

[7] In attempting to support their arguments, among other things, the plaintiffs cite to a newspaper report by Associated Press reporter Michael Gormley; a press release from New York State Comptroller Alan C. Hevesi; a New York Times column by Al Baker; and a New York Times column by Robert Pear. (Docket No. 1 at ¶¶ 26, 27, 28 and 29).

without means and needs testing" in violation of 42 U.S.C. §§1986 and 1985(3). (Docket No. 1, ¶¶ 62-66).

3. <u>A denial of equal protection and due process by Brown</u>. The plaintiffs assert that Brown is both a state and federal agent of Leavitt and is involved in the conspiracy alleged in Count 2. (Docket No. 1, ¶¶ 67-72).

4. <u>A denial of equal protection and due process by the Orleans County Defendants and Town of Clarendon Defendants</u>. In this claim, the plaintiffs assert that the defendants "confiscated" property taxes as an agent of Brown and that any taking of property for failing to pay taxes imposes a condition of peonage against the 13th Amendment. (Docket No. 1, ¶¶ 73-75).

5. <u>Invidious Discrimination by the Orleans County Defendants and the Town of Clarendon Defendants</u>. The plaintiff assert that his family suffered historical discrimination because he is of Italian and Native American ancestry. (Docket No. 1, ¶¶ 76-88).

6. <u>A denial of due process by the Orleans County Defendants and the Town of Clarendon Defendants</u>. This claim, set forth in one paragraph, seems to be encompassed in Count 4. (Docket No. 1, ¶ 89).

7. <u>Constructive Real Property Taking as against the Orleans County Defendants and the Town of Clarendon Defendants</u>. Here, the plaintiffs assert that the imposition of County Medicaid mandates constitutes a taking of his property. (Docket No. 1, ¶90).

8. <u>Involuntary Servitude and Peonage as against the State, County and Town Defendants</u>. The plaintiff assert that the foregoing constitutes an imposition of involuntary servitude. In addition, the plaintiffs assert, in conclusory form, that they have been "actually assaulted" and that the defendants conduct amounts to a malicious abuse of judicial process and deprivation of "equity consideration." (Docket No. 1, ¶91).

Central to most of the plaintiffs' claims is the argument that the New York State requirement that counties contribute to State's Medicaid funding largely through real property taxes is unfair inasmuch as the cost is imposed upon the counties without county input and without regard to means and needs testing. The Court notes that the plaintiffs had also originally attempted to remove two state court matters, a criminal proceeding and a tax certiorari case, to be included within this federal court action.  Those matters were remanded back to the state courts by the Hon. Richard J. Arcara. (Docket No. 8).[8]

The respective defendants now move to dismiss the complaint.

## Discussion

**Standard of Review**

The defendants have moved to dismiss the complaint on the grounds that it states a claim for which relief cannot be granted.  Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court can not dismiss a complaint unless it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). A Rule 12(b)(6) motion is addressed to the face of the pleading. The pleading is deemed to include any document attached to it as an exhibit, Fed.R.Civ.P. 10(c), or any document incorporated in it by reference. Goldman v. Belden, 754 F.2d 1059 (2d Cir. 1985). In considering such a motion, the Court must accept as true all of the well pleaded facts alleged in the complaint. Bloor v. Carro, Spanbock, Londin, Rodman & Fass, 754 F.2d 57 (2d Cir.

---

[8] The Court notes that the District Court's decision (Docket No. 8) resolves the plaintiffs' motion entitled "petition for removal" (Docket No. 5) incorrectly docketed as a motion for remand.

1985).  However, conclusory allegations that merely state the general legal conclusions necessary to prevail on the merits, and are unsupported by factual averments, will not be accepted as true.  <u>New York State Teamsters Council Health and Hosp. Fund v. Centrus Pharmacy Solutions</u>, 235 F.Supp.2d 123 (N.D.N.Y., 2002).

      Several defendants have also asserted that the Court lacks personal jurisdiction over them.

**Plaintiffs' Challenges to Medicaid Funding**

      Medicaid was enacted in 1965 as Title XIX of the Social Security Act ( 42 U.S.C. § 1396 et seq.).  It is a cooperative federal-state program that was established to enable the states to provide medical services to those who cannot afford such services.  The funding of the program differs from state to state.  Typically, the federal government provides partial funding and establishes broad guidelines regarding mandatory and optional categories of eligibility and services covered.  The costs of Medicaid are shared by the states and Federal government through a formula known as the Federal Medical Assistance Percentage ["FMAP"].  The federal reimbursement rate differs from state to state under FMAP depending upon per capita income.  Reimbursement rates range from 50% to 83%.  New York receives 50% reimbursement from the federal government.  Pursuant to New York State Social Services Law §§61(2) and 88, the state has delegated the initial responsibility to raise funding for Medicaid to the counties.  This initial funding at the county level comes from real property taxes.  The State, in turn, reimburses each county one-half of the non-federally reimbursed costs.  This system of funding has been held constitutional in the face of due process and equal protection challenges similar to those asserted

in this case. <u>Lindsay v. Wyman</u>, 372 F.Supp. 1360 (S.D.N.Y. 1974) *aff'd sub nom* <u>Beame v. Lavine</u>, 419 U.S. 806 (1974).

In any event, the defendants argue that the plaintiffs' federal challenge to the state scheme for Medicaid funding must be dismissed under the Tax Injunction Act, 28 U.S.C. §1341 ["TIA"]. The TIA provides that "[t]he district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. §1341. <u>Kraebel v. New York City Dep't of Hous. Preservation & Dev.</u>, 959 F.2d 395, 400 (2d Cir.) (TIA "bars federal injunctive challenges to state tax laws in federal courts."), cert. denied, 506 U.S. 917 (1992). This prohibition includes "declaratory as well as injunctive relief." <u>Barringer v. Griffes</u>, 964 F.2d 1278, 1280 (2d Cir.1992). To be adequate, the state remedies must allow a plaintiff to assert his federal right in state court. <u>Great Lake Dredge & Docks v. Juffman</u>, 319 U.S. 293, 300-301 (1943); <u>Roswell v, LaSalle Nat'l Bank</u>, 450 U.S. 503, 512-13 (1981). In <u>Fair Assessment in Real Estate Ass'n, Inc. v. McNary,</u> 454 U.S. 100, 116 (1981), the Court made it clear that "taxpayers are barred by the principle of comity from asserting § 1983 actions against the validity of state tax systems in federal courts. Such taxpayers must seek protection of their federal rights by state remedies, provided of course that those remedies are plain, adequate, and complete, and may ultimately seek review of the state decisions in this Court." See also <u>Hill v. Kemp,</u> 478 F.3d 1236, 1249 (10th Cir. 2007)(Federal-court action by motorists and abortion-rights organization seeking to enjoin on First Amendment grounds state's statutory scheme for specialty license plates for automobiles, based on its express inclusion of "Choose Life" and "Adoption Creates Families" plate options, was not excepted from Tax Injunction Act's (TIA)

jurisdictional prohibition on theory that plaintiffs were challenging assessment imposed on third parties rather than on themselves; suit was expressly aimed at preventing state from exercising its sovereign power to collect revenues).

Central to the relief requested by the plaintiffs is a "stay of all real property foreclosures in New York State"; as well as the appointment of a special master to "review the entire real property assessment due process of law." (Docket No. 1 at page 35).  The complaint seeks to restrain the collection of local property taxes to the extent they are to be used to fund Medicaid.  The plaintiff has not demonstrated that a plain, speedy and efficient remedy could not be available in the state court.  In 423 South Salina Street, Inc. v. City of Syracuse, 566 F.Supp. 484 (N.D.N.Y. 1983) *aff'd on decision below* 724 F.2d. 26 (2 Cir. 1983), the plaintiff claimed that the city officials conspired to "deliberately overpass real property in the downtown area" resulted in deprivation of [plaintiff's] property without due process of law, without compensation, and without equal protection of law."  The Court dismissed the claims based upon the TIA finding that the state courts provided adequate remedies for such claims.  The Court noted the availability for challenging assessments under Article 7 of the New York Real Property Tax Law ("NYRPTL"), as well as the availability to bring a §1983 action, and a declaratory judgment action pursuant to Article 78 of the New York Civil Practice Law and Rules ("CPLR").  423 South Salina Street Inc., 566 F.Supp. At 492.   Several similar claims asserting constitutional challenges to real property assessment schemes have been presented and adjudicated in the New York state courts.  For example, in Trump v. Chu, 65 N.Y.2d 20 (1985), the state court rejected a claim that Tax Law article 31-B, which imposes a 10% tax on gains derived from real property transfers, "violates the equal protection clause of both the United

States Constitution (US Const 14th amend) or the New York State Constitution (NY Const, art I, §11)" by exempting transfers for less than one million dollars.  Trump, 65 N.Y.2d at 23. See also Foss v. City of Rochester, 65 N.Y.2d 247 (1985); Board of Managers of Acorn Ponds v. Board of Assessors, 197 A.D.2d 621-622 (2d Dept. 1993); Kraebel v. New York City Department of Finance, 217 A.D.2d. 416, 417 (1st Dept.  1995).

Because the target of each of the plaintiffs' constitutional claims is the state tax scheme used to fund Medicaid (whether the claim is characterized as an equal protection violation, a Fifth Amendment "taking", or involuntary servitude), and the relief required for each requires the enjoinment of the collection of a state tax, the TIA deprives the Court of jurisdiction to hear the federal claims asserted in the Counts 1, 2, 3, 4, 6, 7 and 8 of complaint.[9]

**Fifth Cause of Action**

In their Fifth Cause of Action, (Docket No. 1 at ¶¶ 76-88), the plaintiffs set forth meandering allegations spanning several subjects.  The Forjone's start out naming the following as participating in the denial of their equal protection rights: Dudek, the Orleans County Board of Real Property, the Town of Clarendon defendants, and Ifigenia Brown.  They also name retired New York State Supreme Court Justice Paul I. Miles, New York State Supreme Court Justice James P. Punch, Clarendon Town Attorney Karl S. Essler, Orleans County Treasurer

---

[9] Leavitt also asserts that the complaint must be dismisses as against it for lack of subject matter jurisdiction under Rule 12(b)(1) inasmuch as the United States has not waived sovereign immunity with respect to the claims in this case.  It is well-established that an individual cannot sue the United States, or its agencies, without an express waiver of sovereign immunity. United States v. Mitchell, 445 U.S.  535 (1980).  The complaint may be dismissed as against the Leavitt on this ground as well.

Susan M. Heard, and Orleans County Attorney David C. Schubel – none of whom are defendants in this action. (Docket No. 1 at ¶ 76).  In paragraphs 77 through 81, the plaintiffs recite their personal family history going back to the 1930s; recounting John Joseph Forjone's heritage as being of Native American and Italian ancestry.  (Docket No. 1 at ¶ 79).  It is alleged that in the 1930s, people in the Town of Clarendon discriminated against "Italian immigrants, Native Americans, and Black Americans."  (Docket No. 1 at 77).  It is not alleged that any of the defendants in this case participated in such conduct.  The plaintiffs further assert that during the 1960s and 1970s, "officials of the County ... as a pattern of invidiously discrimination harassed Charles Forjone [plaintiff's father] and his itinerant employees ... thereby forcing itinerant workers to seek work elsewhere and causing increased overhead economic viability loss, when also combined with the tremendous impact of policies promoting the post industrial, post agricultural, post Erie Canal economy, that as a result now leaves only the Republicans to dominate contrary to State Election law ... and left the Democrats to dominate elsewhere without competition as required under law."  (Docket No. 1 at ¶ 80).  The plaintiffs' then discuss the failing health of Charles Forjone; the transfer of his property to Charles Forjone's children; that plaintiff John-Joseph Forjone's two brothers were harassed an involved in misdemeanor arrests, drawing the attention of Judges Miles and Punch. (Docket No. 1 at ¶ 82).  In paragraphs 82 through 86, the plaintiffs' recount their interaction with Judges Miles and Punch relating to child custody proceedings and charges regarding the alleged possession of the child pornography  (¶ 85); and a spot zoning complaint (¶86).  The plaintiffs conclude that due to the "invidious discrimination" described in ¶¶ 77-86, his equal protection claims regarding real property tax

assessments "didn't have a snowballs chance in hell" before Judge Punch who issued sanctions against Forjone. (Docket No. 1 at 88).

The defendants assert that these claims are barred by the doctrine of res judicata because the plaintiffs raised their alleged inability to obtain a fair hearing in an application to the Appellate Division, Fourth Department. (Docket No. 24 at page 8). In any event, these allegations fail to state a cause of action against any defendant in this case and should be dismissed.

**The Plaintiffs' State Law Claims**

The complaint also appears to assert state law claims including "malicious assault" (Docket No. 1 at ¶¶ 93, 94), and harassment (Docket No. At ¶ 96). In light of the fact that the federal claims in the complaint are to be dismissed, the court should decline to exercise supplemental jurisdiction over any state law claims raised by the plaintiff in this matter. <u>Carnegie-Mellon University v. Cohill</u>, 484 U.S. 343 (1988); <u>Tops Markets, Inc. V. Quality Markets, Inc.</u>, 142 F.3d. 90, 103 (2d Cir. 1998).

**Motion to Amend the Complaint**

The plaintiffs have also moved to supplement the complaint to assert similar claim President George W. Bush, Alan C. Hevesi, Sheldon Silver, Joseph Bruno, The City of New York, Michael Bloomberg, The County of Orleans, The County of Genesee, and the Town of Wyoming. (Docket No. 25-2). The proposed amended complaint asserts that the defendants

"maliciously interfere with contractual obligations of the Social Security Act and flout the Immigration and Nationality Act (Docket No. 25-2 at ¶ 12); challenges the size of representation of New York City as being in violation of the New York State Constitution; (Docket No. 25-2 at ¶ 46); accuses Bloomberg and New York City as conducting an "ongoing racketeering conspiracy" (Docket No. 25-2 at ¶ 65); and that a conspiracy exists to divert funds "to the detriment of upstate municipal entities" (Docket No. 25-2 at ¶89).

Most of these claims have virtually nothing to do with the Medicaid funding issue at the center of the original complaint. To the extent the claims in the proposed supplemental are related to the claims in the original complaint, the amendment would be futile.  This untimely application to amend the complaint is denied

**The Town of Clarendon Defendants and**
**Motion to Serve Complaint Nunc Pro Tunc**

The Town of Clarendon asserts that the Court lacks personal jurisdiction over the Town because service was made upon the Town Attorney who is not authorized to accept service on behalf of the Town.  The plaintiffs' do not appear to dispute this.  Nicosia and Beadle also assert that service upon them was improperly made because they did not hold office at the time they were served.  The plaintiff has filed a motion "for permission to serve the complaint and associated papers nunc pro tunc." (Docket No. 21).  In this document, the plaintiffs' appear to address the service issues raised by the Town of Clarendon defendants.  The plaintiffs asserts that Nicosia and Beadle were properly served (Docket No. 21 at ¶¶ 3, 6).  Further, the plaintiffs seek to join parties who have become Town Board members after the initiation of this action.

(Docket No. 21 at ¶¶ 5, 6). [10]  In any event, in light of the fact that it is recommended that all of the claims in the complaint be dismissed, the Court denies the motion to file a complaint *nunc pro tunc* in its entirety.

**Motion for Default Judgment**

The plaintiffs move for a default judgment against Leavitt. (Docket No. 64).  The motion should be denied as premature.  At the time the motion was filed, the plaintiffs had not yet served the United States Attorneys Office in this district as required under Rule 4(i)(2)(A) and Rule 4(a)(1)(A) of the Federal Rules of Civil Procedure.[11]  Furthermore, even if proper service had been made as to Leavitt, pursuant to Rule 55(e) of the Federal Rules of Civil Procedure, "no judgment by default shall be entered against the United States or an officer or agency thereof unless the claimant establishes a claim or right to relief by evidence satisfactory to the court."  Inasmuch as it is recommended that each of the claims asserted in the complaint be dismissed, the entry of default judgment against the United States in this case would be inappropriate. The motion for default should be denied.

---

[10]   Some of the plaintiffs' allegations are difficult to interpret.  For example, at ¶ 11, he seeks "The joinder of mis joinder of party as Defendants: Susan Colby Clarendon Town Clerk." The plaintiffs also refer to "non-joinder" (¶12) and interpleader (¶ 39).

[11]   Leavitt also argues that since the plaintiffs failed to serve him within 120 days after filing the complaint, the complaint should be dismissed as against him under Rule 12(b)(5) of the Federal Rules of Civil Procedure. (Docket No. 70 at 24). The complaint may be dismissed as against Leavitt on this ground as well.

**Motion for Sanctions**

The Town of Clarendon defendants and the Orleans defendants have filed motions for Rule 11 sanctions.  The defendants assert that this entire action "was commenced for the purpose of delaying and hindering the Town of Clarendon's efforts to enforce a monetary judgement imposed against plaintiff John-Joseph Forjone for frivolous conduct and to impede the Town's prosecution of him for violations of the Town Zoning Ordinance." (Docket No. 27-2).

The undersigned has jurisdiction to consider this motion, see Weeks Stevedoring Co. v. Raymond Int'l Builders, Inc.,  174 F.R.D. 301, 304 (S.D.N.Y.1997) (Magistrate Judge's decision on Rule 11 sanctions is not dispositive), Novelty Textile Mills, Inc. v. Stern, 136 F .R.D. 63, 75 (S.D.N.Y.1991) (Lee, Mag. J.) (Magistrate Judge has jurisdiction for monetary sanctions under 28 U.S.C. §1927, similar to Rule 11 sanctions).

Although the timing of the action, and the inclusion of certain claims against the local defendants are suspect, because the plaintiff's primary claims are being dismissed based upon the TIA (which allows them to be brought in a state forum), the Court declines to award sanctions at this time.

**Conclusion**

Based on the above, it is recommended that the defendants' respective motions to dismiss be granted consistent with the above; that the complaint be dismissed in its entirety; that the motion for a default judgement be denied.

It is Ordered that the motion to amend the complaint, the motion to change venue, as well as the motion to serve the complaint nunc pro tunc, are denied.   The respective motions for sanctions are denied.

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within ten(10) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as WDNY Local Rule 72(a)(3).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME,  OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.**  Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed2d 435 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and WDNY Local Rule 72(a)(3).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance.  See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to WDNY Local Rule 72.3(a)(3), "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 72.3(a)(3) may result in the District Court's refusal to consider the objection.**

So Ordered.

                                                  /s/ Hugh B. Scott
                                                  United States Magistrate Judge
                                                  Western District of New York

Buffalo, New York
April 30, 2008